## AUSTIN v. RILEY et al.

### (Circuit Court, S. D. Iowa, W. D.   May 10, 1893.)

**1. OPENING DECREE—PRACTICE OF STATE COURT—EQUITY CAUSES.**

The practice of a state court in opening judgments or decrees by default after the term at which they became absolute will not be observed in a suit in equity in a federal court, under Rev. St. § 914, which requires the practice of the federal courts to conform to that of the state courts only in "civil cases other than equity causes."

**2. SAME—JURISDICTION—SUBSEQUENT TERM.**

The federal circuit court has no jurisdiction of a motion to set aside a final decree upon a bill taken for confessed, made after the expiration of the term at which such decree became absolute; and it is immaterial that a different decree would have been entered if the facts had been presented by a timely defense, or that extreme hardship would result, or that the failure to defend was occasioned by want of skill or diligence on the part of counsel.

**3. SAME—PROCEEDINGS IN ANOTHER COURT.**

And where the decree is one which gives plaintiff's mortgage priority over that of defendant, it is immaterial that before the filing of the bill defendant had procured a decree of foreclosure in a state court, plaintiff not being a party to the suit therein.

**4. SAME—MOTION FOR FINAL DECREE—NOTICE.**

Where an order has been entered that the bill be taken for confessed, defendant, even if he has entered an appearance, is not entitled to notice of subsequent application for final decree, when such application is made in open court.

In Equity. Suit by Julia A. Austin against James F. Riley, Katherine M. Riley, and Benjamin Winchester. Heard on motion to set aside default and vacate the decree. Motion denied.

Statement by WOOLSON, District Judge:

On March 14, 1892, complainant filed in the clerk's office in said western division her bill herein, seeking correction and foreclosure of mortgage given by respondents Riley, and praying that respondent Winchester be decreed to have no lien on or interest in the mortgaged premises, or, if it be found that he has a lien thereon, that it be decreed to be junior to complainant's said lien. On the same day subpoena was duly issued, returnable at the April rule day, and the return of service shows personal service on Winchester on March 16, 1892. Upon the May rule day, on demand of complainant, by praecipe duly filed, default for want of appearance was entered against said Winchester. Upon October 3, 1892, the same being in the second week of the regular term of this court, complainant moved for decree, and the same was duly entered pro confesso upon the default of said Winchester, (as well as of the other respondents,) correcting said mortgage as prayed, adjudging the amount due on said bond thereby secured, and ordering sale of mortgaged premises, etc. Upon October 14, 1892, praecipe for execution was filed, and execution issued on said decree. On the day following, notice of time and place of sale was served personally upon the tenant in possession of the mortgaged premises. On November 12, 1892, the mortgaged premises were duly sold by the master appointed in said decree, and due report thereof has been made to and confirmed by this court. Upon November 11, 1892, respondent Winchester filed in the office of said clerk a motion asking (1) that the default heretofore entered against him be set aside; (2) that the decree above described be vacated; or, (3) if such decree cannot be vacated, that it be so modified as to decree the priority of lien held by said respondent over the lien of complainant's mortgage. Attached to said motion, to support same, are the affidavits of respondent and G. A. Holmes, of counsel for respondent. These affidavits state that prior to the April rule day, at which respondent was summoned to appear, respondent and his said counsel went to the office of

said clerk, examined the file of papers in this case, and said counsel duly signed and delivered to said clerk the written appearance of respondent, and requested said clerk to file same in this cause, and said clerk stated that he would do so; but they are surprised to find that the same has not been filed, and that no appearance has been entered herein for respondent; that counsel for respondent had no notice of the application for decree herein, nor was said decree submitted to him, nor had he any knowledge or information of the entry of said decree, until after the adjournment of the term at which said decree has been entered. The affidavits also state that the priority of respondent's lien arises from its being a mortgage for the deferred purchase money of said mortgaged premises, and that same was executed and duly recorded some two years before complainant's mortgage was executed, and that at the time of filing of complainant's bill herein respondent had secured a decree of foreclosure of his said mortgage in the (Iowa) state courts, and said premises had been duly sold thereunder. Conversations are also detailed with complainant's counsel, wherein it is claimed that said counsel recognized the said priority of respondent's said lien. Said affidavits also charge said counsel with having committed fraud on respondent's counsel and on the court in obtaining the decree entered herein, giving complainant priority of lien. It may be properly stated here that complainant's counsel filed affidavits denying such conversations and recognition of such priority of lien, and denying all fraudulent, etc., action as charged.

Burke & Cassady and G. A. Holmes, for the motion.
Saunders, McFarland & Dickey, opposed.

WOOLSON, District Judge, (after stating the facts.) While counsel for complainant have made a showing seeking to disprove the allegations of the motion and accompanying affidavits, (which impute improper, deceitful, or fraudulent conduct on their part,) they directly deny the power of the court to vacate or modify the decree as attempted. And to the latter question we will first address our attention, since, if this power does not exist, the questions of fact beyond will not demand investigation. The point presented may be thus stated: That the motion having been filed herein after the term of court had ended during which the decree was entered, this court has no power to set aside the default, or modify the decree on motion, as herein attempted. The question presented is not a new question in the United States courts, and its extended examination is not required. The following facts are not disputed: Upon bill regularly filed, respondent was personally served with summons to appear, answer, etc. No appearance is filed in the cause. At the rule day next following the rule day named in the summons, default was entered against respondent. During the term of court next following, on application of counsel for complainant, decree pro confesso was entered, and decree recorded. After close of that term counsel for respondent filed a motion to set aside default and vacate decree. This motion was presented and submitted at the next term following its filing.

First, let it be noticed that this cause is not on the law docket of the court. The argument of counsel for respondent has largely proceeded on the theory that the procedure as to his said motion, and the action the court is to take, will be governed by what he claims to be the practice of the state courts in like matters, and this claim is evidently based on section 914, Rev. St. But counsel will

notice that the section referred to does not include equity causes. "The practice, pleadings, and forms and modes of proceeding in civil cases, other than equity causes," shall conform to the practice and modes of proceeding existing in the courts of the state. So that by the very terms of the section its provisions do not apply to this cause. Lest I may be misunderstood as intending to hold that judgment at law may, in the federal courts, be set aside on motion after term at which they were rendered, I will here quote from Bronson v. Schulten, 104 U. S. 410, a portion of the clear and vigorous statement of Justice Miller. In speaking of a motion filed in that case to open up a judgment at law, he says:

"The question relates to the power of the courts, and not the mode of procedure. It is whether there exists in the court the authority to set aside, vacate, and modify its final judgments after the term at which they were rendered; and this authority can neither be conferred upon nor withheld from the courts of the United States by the statutes of a state, or the practice of its courts."

At another point in the opinion Justice Miller voices the views of the unanimous court as follows:

"It is a general rule of law that all the judgments, decrees, or other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them, during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court. But it is a rule equally well established that, after the term is ended, all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct them, and if errors exist they can only be corrected by such proceeding, by writ of error or appeal, as may be allowed in the court which by law can review the decision. So strongly has this principle been upheld by this court that, while realizing that there is no court which can review its decisions, it has invariably refused all applications for rehearing made after the adjournment of the court for the term at which the judgment was rendered: and this is placed upon the ground that the case has passed beyond the control of the court."

Congress having conferred upon the supreme court of the United States the authority to prescribe rules regulating "the whole practice to be used in suits in equity" by the courts of the United States, (section 917, Rev. St.,) that court has prescribed as the nineteenth rule of practice for the courts of equity:

Rule 19: "When the bill is taken pro confesso, the court may proceed to a decree at any time after the expiration of thirty days from and after the entry of the order to take the bill pro confesso, and such decree rendered shall be deemed absolute, unless the court shall at the same term set aside the same, or enlarge the time for filing the answer upon cause shown, upon motion and affidavit of defendant."

Respondent Winchester did not avail himself of the provisions of this rule. Had this motion been made during the term at which the decree was rendered, and been accompanied with his affidavit, making a satisfactory showing of merits, this court could then have determined the same, and, if found equitable, have set aside the default and decree, and permitted him to plead, or could have arrested the record and operation of the decree until such motion was decided.

Foster, in his second edition of Federal Practice, (section 350,) says: "When a party to a suit in equity, or his representatives, feels himself aggrieved by a final decree of the court, there are eight ways in which he can apply to have such decree reversed, set aside, and varied;" and he then names these eight ways as either petition for rehearing, bill or supplemental bill, or by appeal, but he does not include any way of so applying by motion. In Sibbald v. U. S., 12 Pet. 488, where a motion was made in a case in equity, the court says:

"No principle is better settled, or of more universal application, than that no court can reverse or annul its own final decree or judgment for errors of fact or law after the term at which they are rendered, unless for clerical mistakes, * * * or to reinstate a cause dismissed by mistake; * * * from which it follows that no change or modification can be made which may substantially vary or affect it in any material thing."

The fact that at the time when this action was commenced respondent Winchester had obtained a decree of foreclosure of his mortgage in the state court in no manner varies the application of the doctrines above stated. He did not choose to make complainant, Austin, a party to his action, so that she is in no wise bound or affected thereby. He was personally notified to appear in this action, and the bill herein advised him of the decree sought.

This court cannot assist him on the ground, as argued by his counsel, that the facts sworn to in his affidavit show that he was entitled to have his lien declared by the decree herein to have priority, should he have appeared and answered and submitted his proofs thereof. As was well said by Judge Blodgett, in Dunlevy v. Dunlevy, 38 Fed. Rep. 466, in considering the failure of a complaint to answer and defend against a cross bill:

"It is true the grounds taken by the cross bill might not have been sustained had the case been resolutely contested, and the complainant's rights under the proof fully discussed and presented to the court by counsel. But, instead of doing this, the defendants in the cross bill allowed it to be taken as confessed against them, thereby, in effect, admitting all the allegations contained in the cross bill."

In Thomson v. Wooster, 114 U. S. 104, 5 Sup. Ct. Rep. 788, will be found a clear and thorough consideration of the practice and effect of taking bills pro confesso:

"The bill, when confessed by the default of the defendant, is taken to be true in all matters alleged with sufficient certainty. But in respect to matters not alleged with due certainty, or subjects which from their nature and the course of the courts require an examination of detail, the obligation to furnish proof rests on the complainant. We may properly say, therefore, that to take a bill pro confesso is to order it to stand as if its statements were confessed to be true, and that a decree pro confesso is a decree based on such statements assumed to be true, and such decree is as binding and conclusive as any decree rendered in the most solemn manner. It cannot be impeached collaterally, but only upon a bill of review or a bill to set it aside for fraud."

Counsel for respondent forcibly argues that the appearance of respondent Winchester was actually entered in the case, and presents affidavits to that effect, and thereupon they contend that the decree should have been submitted to counsel for respondent

before the same was handed up to the court, or at least that such counsel should have had notice of the application for final decree; citing Bennett v. Hoefner, 17 Blatchf. 341. Thomson v. **Wooster,** supra, contains the following, which is pertinent to this point:

"As we have seen, by the eighteenth rule in equity it is provided that, if the defendant make default in not filing his plea, demurrer, or answer in proper time, the plaintiff may as one alternative enter an order as of course that the bill shall be taken pro confesso, 'and thereupon the cause shall be proceeded in ex parte.' The old rules adopted in 1822 did not contain this ex parte clause. They simply declared that, if the defendant failed to appear and file his answer within three months after appearance day, the plaintiff might take the bill for confessed, and that the matter thereof should be decreed accordingly; the decree to be absolute, unless cause should be shown at next term. * * * Under these rules the English practice was left to govern the subsequent course of the proceeding by which, as we have seen, the defendant might have an order to permit him to appear before the master, and be entitled to notice. Whether, under the present rules, a different practice was intended to be introduced, is a question which it is not necessary to decide in this case."

If the phraseology of the present rule is to govern, the complainant in the ex parte proceedings would not be required, however much it might be thought the more desirable plan, to give notice to the party in default of the application for final decree. But if such notice were necessary, the motion for final decree, when made in open court, is of itself notice as to a case then pending in such court.

Suggestions are strongly pressed in argument that a denial of this motion will disastrously affect the respondent in his old age, etc., and counsel for complainant reply with an argument from the standpoint of financial injury to complainant if the motion be sustained. These considerations cannot change the law applicable to this case. Judge Wilkins in his clear and very satisfactory decision in The Illinois, 1 Brown, 13, 20 Myer, Fed. Dec. 430, had occasion to speak upon this very question. That decision was upon motion to open a decree. Having learnedly reviewed the authorities, and denied the motion, he adds:

"Again, Judge Story, speaking of the constitutional powers of the government, says, (1 Const. § 426:) 'On the other hand, a rule of equal importance is not to enlarge the construction of a given power beyond the fair scope of its terms merely because the restriction is inconvenient, impolitic, or even mischievous. If it be mischievous, the people may remedy it. If they do not do so, the presumption is that the mischief done by a restriction of power is less than would arise by its extension. It is a choice between two evils, choosing the least.' And the same remark will apply to grants of judicial power,—the grant is not to be extended by construction beyond its fair terms. If mischief ensues in individual cases, it is better to bear that than the greater evil of extending the power."

### And again, Judge Wilkins says:

"It may at first view seem harsh, and in some cases it may operate hardly, yet it is the only safe rule that can be followed. Any other practice would destroy the sanctity and conclusiveness of records, open the door to endless litigation, unsettle rights of property and person, cause delay, expenses, and ruin. 'Interest reipublica ut sit finis litium.' It would accumulate and clog the business of courts, and render it impossible to get through it. As the

rule now is, parties understand their rights and duties, and it becomes them to be vigilant and prompt, and not to sleep upon them."

But there has not been in this case, on the part of the respondent, that diligence which favorably affects a court of equity. The affidavits presented state that before the April rule day counsel for respondent delivered to the clerk the written appearance of respondent. Default was not moved until the May rule day. And the decree herein was not entered until the October following, and then on motion in open court. There is no suggestion that until in November following any attempt has been made on the part of respondent, with regard to pleading herein, nor any cause shown why, during the months intervening. between the attempted appearance and entry of decree, a pleading was not presented, setting up what is now claimed to be the prior lien of respondent, and offering proofs thereunder.

In Ruggles v. Eddy, 11 Blatchf. 524, Judge Woodruff, in overruling a motion to open an interlocutory decree, and permit evidence upon a point not theretofore presented, says:

"I am constrained to hold the defendants concluded. Their case, as made by themselves, rests either on their own want of due diligence or the want of due diligence on the part of their counsel. By this the complainant ought not to be so far prejudiced as, after decree, reference, and report of the master, to be compelled to go again through the litigation on a point distinctly presented and proper to be met at the outset. Their case, as presented by the counsel whom they have employed for the purposes of this motion, and who regards it as clear that, as to most of the stoves they had made, they had avoided the operation of the patent, seems, at first view, one of hardship; but, if that is so, the defendants have brought it upon themselves by their own negligence or by relying on a degree of vigilance, study, and accuracy on the part of their several counsel which they now think was inadequate for their protection. No case has been referred to which in any degree tends to sanction the latitude of indulgence which the defendants here seek."

Cases are numerous in the other direction, and Mr. Justice Blatchford, now of the supreme court, and the circuit judge, in overruling a motion after interlocutory decree to permit counsel, then just employed in the case, to introduce evidence on material points not presented on the hearing of the case, says, in De Florez v. Raynolds, 16 Blatchf. 397:

"If such grounds were to be permitted as reasons for opening cases, there would never be an end to a suit, so long as new counsel could be employed who could allege and show that prior counsel had not been sufficiently diligent or experienced or learned."

These are cases of much greater force in the application of the matter of personal hardship than is the case at bar. I cite them as illustrations of how this question of practice is applied, but without intending to apply to counsel herein any of the terms of censure which appear to attach to counsel in the cases cited. Judge Wheeler, (Witters v. Sowles, 31 Fed. Rep. 11,) in referring to the cases just cited, and others, says:

"These cases abundantly show that no mistake of judgment or want of attention of counsel, if there are any such, which is not intended to be affirmed or implied, affords any just or proper grounds for granting this motion and opening the case. The judgments and decrees of courts should rest upon

such solid bases of fact as may be had by the usual modes of procedure and the rules of evidence established by law and usage. At first sight, it might appear that the retaking of evidence or the taking of new evidence could justly wrong no one, for the making of truth to appear would afford greater opportunity for just judgment. But affording chances for retaking testimony after judgment might not always, and probably would not often, tend to the elucidation of truth. Temptations would be furnished which it is the policy of the law to avoid."

Mr. Justice Harlan, in Morgan's Co. v. Railway Co., 32 Fed. Rep. 530, concisely sums up the rule which must govern the case at bar as to the motion under consideration when he says:

"It is an established principle that, except upon bills of review in cases in equity, upon writs of error, coram nobis, in cases at law, or upon motions which in practice have been submitted for the latter remedy, no court can reverse or annul its own final decision or judgment for errors of law or fact after the term at which they have been rendered, unless for clerical mistakes, from which it follows that no change or modification can be made which may substantially vary or affect it in any material thing."

Since this court is powerless to open up the decree herein on motion as attempted, it becomes unnecessary to investigate the issues of fact tendered in the affidavits submitted with the motion. The motion of respondent Winchester to set aside default and to vacate or modify decree must, therefore, be overruled, and at his costs. The clerk will make due entries accordingly.