PROVIDENT LIFE & TRUST CO. OF PHILADELPHIA v. CAMDEN & T. RY. CO. et al.

(Circuit Court. of Appeals, Third Circuit.  January 12, 1910.)

No. 95 (1,316).

1. APPEAL AND ERROR (§ 324*)—RIGHT TO APPEAL—JOINT DEFENDANT.
In the absence of an application to the court for a summons and severance, or any equivalent thereof, a joint defendant in an equity suit to foreclose a street railway mortgage was not entitled to appeal from the decree of foreclosure and sale against all parties.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1806–1809; Dec. Dig. § 324.*]

2. EQUITY (§ 420*)—DECREE PRO CONFESSO—NOTICE.
Where a decree pro confesso had been entered against a defendant, he was not entitled to notice and to a hearing on the settlement of the final decree.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 970; Dec. Dig. § 420.*]

3. STREET RAILROADS (§ 55*)—MORTGAGES—FORECLOSURE—DECREE.
Where a decree for the foreclosure and sale of property under street railway mortgages directed that all the property described in the mortgages be sold, it sufficiently ascertained and defined the property to be sold.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 55.*]

4. APPEAL AND ERROR (§ 173*)—QUESTIONS NOT RAISED AT TRIAL.
Appellant could not object for the first time on appeal from a decree for the foreclosure and sale of property under street railway mortgages that the principal sums evidenced by the bonds were not due.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1079–1120; Dec. Dig. § 173.*]

5. EQUITY (§ 420*)—DECREE PRO CONFESSO—RIGHT TO FURTHER HEARING.
Where a defendant after decree pro confesso against him was permitted to be heard on objection to the decree, such hearing was mere matter of favor, and hence he could not complain that he had not been heard as fully as he desired.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 420.*]

6. STREET RAILROADS (§ 55*)—MORTGAGES—FORECLOSURE—REDEMPTION.
Where a bill to foreclose certain street railway mortgages was not filed for strict foreclosure, and the decree for sale of the property was authorized by the general prayer for relief, the fact that the decree did not fix a time within which the mortgagor might redeem was immaterial; the mortgagors being entitled to redeem at any time before consummation of the sale.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 55.*]

7. STREET RAILROADS (§ 55*)—FORECLOSURE—REDEMPTION.
A holder of bonds secured by a street railway mortgage has no right to redeem from a foreclosure sale, as such right exists solely in the mortgagor.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 55.*]

8. APPEAL AND ERROR (§ 1019*)—REVIEW—FINDINGS OF MASTER.
Findings of a master on conflicting evidence are presumed correct, and will not be disturbed unless obvious error or mistake appears.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4008–4010; Dec. Dig. § 1019.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. STREET RAILROADS (§ 55*)—MORTGAGES—FORECLOSURE—PRIORITY OF CLAIMS.
   Where after the appointment of a receiver for a street railroad by a state court mortgage foreclosure proceedings were instituted in a federal court by the trustee for the bondholders, and permission was granted to make the receiver a party to the suit on condition that such permission should not interfere with the receiver's control, management, or administration of the estate, and the receiver's administration was beneficial to the bondholders, a provision of the foreclosure decree making the receiver's compensation payable prior to the mortgage debts, so far as the moneys in the receiver's hands should be insufficient to pay them, was proper.
   [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 55.*]

10. STREET RAILROADS (§ 55*)—MORTGAGES—FORECLOSURE—DEPOSIT.
    A provision in a decree for the sale of a street railroad under mortgage foreclosure, requiring prospective bidders to deposit $50,000 at least 24 hours before noon on the day of the sale, was within the discretion of the court.
    [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 55.*]

11. STREET RAILROADS (§ 55*)—MORTGAGES—FORECLOSURE—ADVERTISEMENT OF SALE.
    That the method of advertisement of the property of a street railroad company to be sold under a foreclosure decree did not conform to the method designated in the mortgages was immaterial; such foreclosure being governed by the provision of Act Cong. March 3, 1893, c. 225, 27 Stat. 751 (U. S. Comp. St. 1901, p. 710).
    [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 55.*]

12. STREET RAILROADS (§ 55*)—MORTGAGES—FORECLOSURE—UPSET PRICE.
    Whether an upset price should be fixed for the sale of street railway property under mortgage foreclosure was within the judicial discretion of the trial court.
    [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 55.*]

Appeal from the Circuit Court of the United States for the District of New Jersey.

Action by the Provident Life & Trust Company of Philadelphia, trustee, against the Camden & Trenton Railway Company and others. From a decree of foreclosure and sale, defendant Daniel Killion appeals. Affirmed.

William A. Glasgow, Jr., Spencer Simpson, and Benjamin Nields, for appellant.

French & Richards, Abraham M. Beitler, and Samuel Dickson, for appellee.

Argued before GRAY and BUFFINGTON, Circuit Judges, and CROSS, District Judge.

CROSS, District Judge. The Camden & Trenton Railway Company executed two mortgages to the Provident Life & Trust Company of Philadelphia as trustee. The first, dated November 1, 1899, was made to secure an issue of 750,000 bonds, and the second, July 2, 1901, to secure an issue of 1,750,000. Bonds to the amount of $710,000 were certified and are outstanding under the first mortgage and under the second (a general mortgage) to the amount of $622,500. Default was made in the payment of the coupons due November 1, 1907, on the first mortgage, and of those due January 1, 1908, on the second mort-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

gage. The president of the Camden & Trenton Railway Company thereupon, on February 18, 1908, filed his bill of complaint in the Court of Chancery of the state of New Jersey, charging, among other things, that said company was hopelessly insolvent; that for a long time it had been operated at a loss; that the deficit for the year 1907 was $46,558.90; and that it owed about $200,000 for and above its mortgage indebtedness. The allegations of the bill having been admitted by the answer of the company, a receiver was appointed, pursuant to the prayer of the bill. In September, 1908, as appears by a statement in the brief of the appellees, and not denied at the argument, the appellant, Daniel Killion, filed a petition in the Circuit Court of the United States for the District of New Jersey, setting out that he owned a $1,000 bond secured by the first mortgage above mentioned; that the company was insolvent; that its roadbed was in a dangerous condition, so that accidents frequently occurred; that it was necessary for the protection of the bondholders that the property be proceeded against promptly and sold; and that he had requested the trustee to institute a suit to foreclose said mortgage, but that, acting in collusion with the other bondholders to deprive him of his rights, it had refused so to do. He therefore asked for a rule that the trustee show cause why it should not institute such a suit at once, so that the premises might be sold by an order of said court. The trustee answered said petition, stating that it had been requested by over 90 per cent. of the bondholders secured by the first mortgage to institute foreclosure proceedings thereon, and that it intended to do so at once. The trustee thereupon applied to the Court of Chancery of New Jersey for permission to sue the receiver appointed by that court, which was granted by the chancellor upon terms, among others, that all known bondholders should be made parties defendant to such suit when instituted. Accordingly, Killion, the appellant herein, was made a defendant. Subsequently a similar suit was commenced upon the second mortgage, whereupon the two actions were consolidated by order of the court. Killion, however, did not cause his appearance to be entered in the suit to which he was a party, nor did he file any answer thereto. Consequently a decree pro confesso was entered against him, and an order of reference made to a master, with the specific direction, among others, that he should "ascertain and report what is due and payable to the complainant trustee for principal and interest upon the two mortgages made to it by the defendant." Killion was allowed to appear before the master, and upon the coming in of his report filed exceptions thereto, which were entertained by the court and disposed of after Killion's counsel had been heard thereon. Killion, however, was not heard upon the settlement of the final decree, for the reason, as stated therein, that a decree pro confesso had been entered against him. He accordingly has appealed from such decree, and has filed 13 assignments of error. It may properly be noted at this point that Killion, as was admitted at the argument, holds but one $500 bond issued under the first mortgage, the amount of which, with interest thereon to date, was tendered him in open court at the time this appeal was allowed, upon condition that he would assign his bond; which proposition, however, he declined. He is not interested at all under the second mort-

gage; the amount due upon which, owing to the consolidation of the two suits, as already stated, is included in and forms a part of the decree appealed from. No appeal has been taken by any one, and manifestly could not be by the appellant, from so much of the decree as relates to the second mortgage, so that in any event the complainant trustee is entitled to a sale thereunder.

Before entering upon the consideration of the various assignments of error, one of the propositions raised and argued in behalf of the appellees demands attention. The point made is that, inasmuch as the Camden & Trenton Railway Company, its receiver, and the other defendants have taken no appeal, the appellant cannot. That proposition is well recognized in equity practice, and must be regarded as settled. So far as the record shows, no application was made by Killion to the other defendants to join in the appeal, nor was there any refusal on their part to do so, nor did he make any application to the court for a summons and severance, or any equivalent thereof. In the case of Hardee v. Wilson, 146 U. S. 179, 181, 13 Sup. Ct. 39 (36 L. Ed. 933), the court says:

"In the case of Masterson v. Herndon, 10 Wall. 416 [19 L. Ed. 953], it was held that it is the established doctrine of this court that in cases at law, where the judgment is joint, all the parties against whom it is rendered must join in the writ of error; and in chancery cases all the parties against whom a joint decree is rendered must join in the appeal, or they will be dismissed. There are two reasons for this: (1) That the successful party may be at liberty to proceed in the enforcement of his judgment or decree against the parties who do not desire to have it reviewed. (2) That the appellate tribunal shall not be required to decide a second or third time the same question on the same record. In the case of Williams v. Bank of the United States, 11 Wheat. 414 [6 L. Ed. 508], the court says that, where one of the parties refuses to join in a writ of error, it is worthy of consideration whether the other may not have remedy by summons and severance: and in the case of Todd v. Daniel, 16 Pet. 521 [10 L. Ed. 1054], it is said distinctly that such is the proper course."

Again, in Davis v. Mercantile Trust Company, 152 U. S. 590, 14 Sup. Ct. 693, 38 L. Ed. 563, it is stated that one of the ordinary rules respecting appeals is that all the parties to the record who appear to have any interest in the order or ruling must be given an opportunity to be heard on such appeal; citing Masterson v. Herndon, 10 Wall. 416, 19 L. Ed. 953, Hardee v. Wilson, supra, and Inglehart v. Stansbury, 151 U. S. 68, 14 Sup. Ct. 237, 38 L. Ed. 76. And later on in the opinion, speaking of the appellant therein, who as a bondholder had been allowed to intervene in a foreclosure proceeding, the court says:

"Neither does the appeal from the decree stand in any better condition. In a decree for the foreclosure of a mortgage the two parties principally and primarily interested are the mortgagee and the mortgagor. No third party should be permitted to disturb such a decree unless and until both mortgagee and mortgagor are given an opportunity to be heard. The mortgagor may be unwilling that the decree should be set aside notwithstanding irregularities in prior proceedings, for fear that on a subsequent hearing a larger sum may be decreed against him. It is not necessary in any given case to determine that his interests would or would not be promoted by the setting aside of the decree; it is enough that in that matter he has a direct interest, and because of this interest common justice requires that no change shall be made in the terms of that decree, nor shall it be set aside without giving him a chance to be heard in its defense. Ordinarily it may be presumed that all the par-

ties to the record are interested, and so it is often said that all such parties must be joined as appellants or appellees, plaintiffs in error or defendants in error; but it is unnecessary to rest this case upon the mere fact that the mortgagor in this case was a party to the record—the only defendant in the first instance. It was not only such a party, but is also one directly and vitally interested in the question whether the decree of foreclosure and the sale shall stand, and yet it is not before us."

Again, in Beardsley v. Ark. Louisiana Railway Company, 158 U. S. 123, 127, 15 Sup. Ct. 786, 788 (39 L. Ed. 919), the Supreme Court, by Chief Justice Fuller, says:

"It is settled, for the reasons too obvious to need repetition, that in equity cases all parties against whom a joint decree is rendered must join in an appeal if any be taken; but this appeal was taken by John D. Beardsley alone, and there is nothing in the record to show that his codefendants were applied to and refused to appeal, nor was any order entered by the court on notice granting a separate appeal to John D. Beardsley in respect of his own interest. The appeal cannot be sustained. Hardee v. Wilson, 146 U. S. 179 [13 Sup. Ct. 39, 36 L. Ed. 933]; Davis v. Mercantile Co., 152 U. S. 590 [14 Sup. Ct. 693, 38 L. Ed. 563]."

See, also, Sipperly v. Smith, 155 U. S. 86, 15 Sup. Ct. 15, 39 L. Ed. 79; Wilson v. Kiesel, 164 U. S. 248, 17 Sup. Ct. 124, 41 L. Ed. 422; Inglehart v. Stansbury, 151 U. S. 68, 72, 14 Sup. Ct. 237, 38 L. Ed. 76; Feibelman v. Packard, 108 U. S. 14, 1 Sup. Ct. 138, 27 L. Ed. 634; Mason v. United States, 136 U. S. 581, 10 Sup. Ct. 1062, 34 L. Ed. 545; Port v. Schloss Bros. & Co., 149 Fed. 731, 79 C. C. A. 437; Hedges v. Seibert Cylinder Oil Cup Co., 50 Fed. 643, 1 C. C. A. 594.

Notwithstanding, however, that the appeal is fatally defective for want of parties, and would have to be dismissed upon that ground, we have examined the various assignments of error and find them without merit. Such only of them, however, as were urged in the appellant's brief and upon the oral argument will be herein considered, and those as briefly as may be.

The first assignment of error, following the order of their consideration in appellant's brief, is based upon the refusal of the court below to hear Killion upon settlement of the final decree, for the reason, as therein stated, that a decree pro confesso had been entered against him. Counsel for appellant cites as authority for his contention Chicago & Vincennes R. R. Co. v. Fosdick, 106 U. S. 47, 27 L. Ed. 47; Southern Pac. R. Co. v. Temple et al. (C. C.) 59 Fed. 17; Davis et al. v. Garrett (C. C.) 152 Fed. 723. From the first case cited he quoted a passage taken from the opinion of the court in Clark v. Reyburn, 8 Wall. 318, 19 L. Ed. 354, relating to a suit instituted for the strict foreclosure of a mortgage, in which case it appeared that there was no finding either of the fact or amount of indebtedness due under the mortgage. This was deemed a ground of reversal, notwithstanding a decree pro confesso had been taken against the parties holding the entire beneficial interest. Obviously such a decree would be fatally defective. The object of the suit was never attained. The amount for which the property could be redeemed was not ascertained, by reason of which lapse the mortgagor was virtually deprived of his right of redemption. In the second and third cases cited it appears that the party against whom the decree went had appeared in the cause by a solicitor, and for that

reason, and that only, such party was deemed entitled to notice of the entering of the final decree. The facts in the case at bar are different. As already stated, Killion had not entered any appearance when the decree pro confesso was taken against him, and furthermore, the final decree herein is complete in itself, and determines all of the essential factors. The effect to be given a decree pro confesso in the federal courts is prescribed in Equity Rule 18, which says:

"And thereupon, after the entry of such a decree, the cause shall be proceeded in ex parte, and the matter of the bill be decreed by the court at any time after the expiration of thirty days from and after the entry of said order, if the same can be done without an answer, and it is proper to be decreed."

In Frow v. De La Vega, 15 Wall. 552, 21 L. Ed. 60, the Supreme Court says:

"The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree pro confesso against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence: he cannot be heard at the final hearing. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike, the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all."

Austin v. Riley (C. C.) 55 Fed. 833, holds that a person against whom a decree pro confesso has been entered is not entitled to notice of an application for a final decree when such application is made in open court. See, also, Thomson v. Wooster, 114 U. S. 104, 5 Sup. Ct. 788, 29 L. Ed. 105.

The next assignment of error, in substance, is that the court failed to find, determine, and ascertain the property covered by the mortgage and to be sold under the decree. Cases cited by the appellant support this proposition, but, as a matter of fact, the property embraced in the mortgages herein was, in our opinion, sufficiently ascertained and defined. It directs, in substance, that all of the property described in the mortgages be sold. This is the customary form. It would be unusual to describe at length in a decree the property which it directed to be sold, unless, indeed, some portions of the mortgaged property had been released from the lien of the mortgage, or other like special circumstances were made to appear. The decree in question directed a sale of the property described in the mortgages of the complainant, and in the mortgage of J. Kearney Rice, receiver, which the master appropriately found under the order of reference to be subsequently acquired property, and, as such, expressly included in the lien of the complainant's mortgages. The property decreed to be sold is therefore sufficiently defined. It is susceptible of definite ascertainment. The master reported it with such certainty that the appointee directed to make the sale would have no difficulty in knowing what property he was directed to sell, or a prospective purchaser what property he was about to buy. This assignment is not in accordance with the facts.

The next assignment of error, briefly stated, alleged that the principal sums evidenced by the bonds were not due and payable. This was

one of the matters specifically referred to the master to ascertain. The language of the order of reference in that respect has already been given. It will be recalled that he was "to ascertain and report what is now due and payable to the complainant, trustee, for principal and interest upon the two mortgages made to it by the defendant." Killion, although not entitled to be present and heard in view of the interlocutory decree standing against him, nevertheless attended before the master, was heard by him, and later was permitted to, and did, file exceptions to his report; but he did not except to the master's explicit finding that the principal and interest of the bonds were due. Having failed to raise the question below, although given the opportunity, he ought not to be permitted to raise it for the first time on appeal, and this irrespective of the fact of the decree pro confesso standing against him. In City of New Orleans v. Fisher, 91 Fed. 574, 34 C. C. A. 15, the Circuit Court of Appeals for the Fifth Circuit held that questions concerning the correctness of a master's findings, which were not raised by proper exceptions to his report, could not be made the ground of assignments of error on appeal. So, too, in Burns v. Rosenstein, 135 U. S. 449, 10 Sup. Ct. 817, 34 L. Ed. 193, the Supreme Court held, in relation to certain matters then under consideration, that the defendant should have brought them to the attention of the court below by exceptions to the master's report, and, having failed to do this, could not for the first time object that the master proceeded upon erroneous views. In McMicken v. Perin, 18 How. 507, 15 L. Ed. 504, the court said:

"The appellant further objects that his debt was not accurately ascertained by the master upon the decree of reference. In Story v. Livington, 13 Pet. 359 [10 L. Ed. 200], this court decided that no objections to a master's report can be made which were not taken before the master; the object being to save time, and to give him an opportunity to correct his errors and reconsider his opinion. And in Heyn v. Heyn, 4 Jacob. 47, it was decided that after a decree pro confesso the defendant is not at liberty to go before the master without a special order, but the accounts are to be taken ex parte. This court will not review a master's report upon objections taken here for the first time."

Again, in Metzker v. Bonebrake, 108 U. S. 66, 2 Sup. Ct. 351, 27 L. Ed. 654, the court held that the findings of a master are prima facie correct, and that only such matters as are brought before the court by exceptions are to be considered. To the same effect are Coghlan v. South Carolina R. Co., 142 U. S. 101, 12 Sup. Ct. 150, 35 L. Ed. 951, and Topliff v. Topliff et al., 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658. Furthermore, that Killion was heard at all was by the favor of the court, and when that favor was withdrawn he had no just cause to complain that he had not been heard as fully as he now desires. The temporary indulgence of the court conferred upon him no such right. So long as a decree pro confesso stood against him, his only right was to move for cause to set it aside. It should also be noted in this connection that neither the mortgagor, its receiver, who under the New Jersey statute has title to the property, nor the chosen trustee of the bondholders, among whom was the complainant, is making any complaint in the premises. It is, moreover, the manifest tenor and purport of the mortgages in question that Killion's rights in any

litigation growing out of a default in the payment of the mortgage bonds were expressly surrendered to, and merged in, the trustee named in the mortgages, whenever such trustee should in good faith act at the request of a majority of the bondholders, and as in this case it is doing at the request of 90 odd per cent. of the bondholders, and with no dissentient save Killion. Under the circumstances, therefore, it is unnecessary to discuss the question whether the entire principal of the mortgage in question is due because of the default in the payment of certain of the coupons.

The next assignment alleges error because the decree did not fix a time within which the mortgagor in the several mortgages mentioned might redeem the property embraced therein, but, on the contrary, directed a sale to be made without affording an opportunity to the mortgagor to pay the mortgage debt and redeem the property covered by the mortgages. No such form of decree, however, was necessary. The bill of complaint in this cause was not filed for a strict foreclosure, the purpose of which is well understood. It is alleged by appellant, however, that there is matter in the prayer of the bill which points to relief by way of strict foreclosure. But if that were admitted, still the decree actually made can be justified under the general prayer for relief, as was held in Sage v. Central R. R. Co., 99 U. S. 334, where at page 342 (25 L. Ed. 394) Mr. Justice Strong, in speaking of the prayer in a bill for the foreclosure of a mortgage then under consideration, says:

"The specific relief sought was a strict foreclosure, but, under the prayer for general relief, it is not questioned that a decree for a sale was appropriate."

Furthermore, under the decree entered in this case, the mortgagor, as a matter of fact, had the right to redeem, according to some authorities, until a sale had been made, but according to the United States Supreme Court, not only until a sale had been made and confirmed, but the deed had been actually delivered. Thus in Chicago & Vincennes R. R. Co. v. Fosdick, supra, that court said:

"But as in cases of strict foreclosure so in cases of sale, the equity of the mortgagor as against the mortgagee is not exhausted until sale is actually confirmed; for if at any time prior he should bring into court for the mortgagee the amount of the debt, interest, and costs, he will be allowed to redeem. It is the deed made to the purchaser, actually transferring the title of the parties to the suit, that terminates the mortgagor's equity of redemption. Brine v. Insurance Co., 96 U. S. 627 [24 L. Ed. 858]."

It is unnecessary to inquire, therefore, whether the bill in this case was in form for a strict foreclosure or for foreclosure and sale, or to note the distinction between those forms of procedure, since in either case the decree under consideration preserved the mortgagor's right of redemption, which exists and will exist until a sale has actually taken place and the title passed thereunder. But were this not so, the assignment under consideration would seem to raise a question in which the appellant has no concern, since under no circumstances would he have any right of redemption; which right, so far, at least, as the equities in this case are disclosed, exists solely in the mortgagor, its successors and assigns.

The next assignment for consideration relates to the mortgage held by J. Kearney Rice, receiver of the New York-Philadelphia Co., and asserts that it is not a lien upon the mortgaged premises prior to the mortgages under foreclosure, for the reason that it has been paid. The master, however, found the contrary, and his conclusions, upon exception by appellant, were, after correcting the interest item, affirmed by the court below, and embodied in its decree. The evidence fully supports the finding, and we would not be warranted in disturbing it. The rule in such cases is that the findings of a master upon conflicting evidence are presumably correct, and will not be disturbed unless obvious error or mistake appears. Warren v. Keep, 155 U. S. 265, 15 Sup. Ct. 83, 39 L. Ed. 144; Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649; Crawford v. Neal, 144 U. S. 585, 12 Sup. Ct. 759, 36 L. Ed. 552.

The next assignment of error relates to the compensation of the receiver, which by the decree is given priority of lien over the mortgages. Upon inspection of the decree it appears that the charges and expenses complained of are made payable prior to the mortgage debts only so far as any moneys in the hands of the receiver shall be insufficient to pay them. While it is true that the receiver is a receiver by appointment of the Court of Chancery, and not of the court below, it is equally true that the title to the property embraced in the mortgages of the complainant was vested in him, and that leave to make him a party defendant herein was sought and obtained from the state court upon condition, among others, that such permission should not extend "to interfere with the present receivership, or disturb the position or control of the receiver, or his management or administration of the estate of the insolvent corporation." It appears by the master's report that the complainant trustee and the bondholders' committee, admittedly representing about 97 per cent. of the bondholders, conceded before him that the receiver's compensation was prior to the lien of the mortgages, and that no person other than the appellant dissented therefrom. The master upon the reference reached the conclusion that the receiver, under the circumstances, "was really acting throughout for the benefit of the bondholders secured by the two mortgages made to the complainant as trustee," and that the case was brought within the principle applied by Vice Chancellor Stevenson in Lembeck v. Jarvis Terminal Co., 68 N. J. Eq. 352, 59 Atl. 565, and accordingly found that the receiver's allowance, fees, and costs, due and to become due, were a lien on the mortgaged premises prior to the mortgages, in so far as any moneys in the hands of the receiver should be insufficient to pay the same. The court below adopted the conclusion of the master. We think the master took a correct view of the matter, and that the decree below in this respect is entirely justified. The receiver's control had undoubtedly conserved the mortgaged property and kept it intact as a going concern. It appears in the case not only that the mortgagor was insolvent, but that its property was greatly dilapidated and in need of repair, and it is not too much to assume that without repair the road not only could not have been safely operated, but would have gone to greater waste; furthermore, that unless

operated its franchises would have been imperiled. The receiver may, therefore, under the circumstances, well be considered as the receiver of the trustee and bondholders. His care and services were in their interests.

The next assignment relates to a required deposit by prospective bidders at the sale of $50,000, to be made at least 24 hours prior to 12 o'clock noon on the day of the sale. This matter rested largely in the discretion of the court, and in the absence of any apparent abuse of such discretion ought not to be disturbed; especially should this be so since we do not see that the appellant will be appreciably injured thereby.

The next assignment, briefly stated, charges that the mode of advertisement prescribed by the decree does not conform to that designated in the mortgages. It is impossible to see how the language in the mortgages can be made to apply to a judicial sale. The provision in that respect is applicable solely to a sale by the trustee, which he is permitted to make under certain circumstances by the provisions of the mortgages. It does not relate in any manner to a judicial sale. Such sales are governed by the provisions of the act of Congress passed March 3, 1893, c. 225, 27 Stat. 751 (U. S. Comp. St. 1901, p. 710).

The only other assignment argued complains because a minimum bid to be received and entertained by the appointee to make the sale was not fixed by the decree. The only authority cited is Blair v. St. Louis, etc., R. Co. (C. C.) 25 Fed. 232, in which Brewer, J., after holding that an upset price must be made, later modifies the positive language of his opinion and says:

"In many states foreclosures of mortgages are attended with an appraisement, and the property must bring a certain proportion of that appraised value, and so we, in harmony with that idea, think an upset price should be fixed."

An examination of the case shows, moreover, that an order of that character was manifestly appropriate therein, because of the fact that there were outstanding receivers' certificates and prior liens which required protection. We can see no necessity, however, for it in this case, and think the matter rested largely in the discretion of the court. The sale is subject to confirmation, and if the property should bring a grossly inadequate price, doubtless the sale would not be confirmed.

The decree is affirmed, with costs.